May it please the court, this appeal is the way for this court to get the law right with respect to two issues. One of them is the proper scope of the trademark doctrine of foreign equivalence and the other one is in relation to the primary significance test and specifically whether or not that test should be used to determine whether a term is generic before there was any alleged trademark use. Now with the court's leave, I'd like to start with the doctrine of foreign equivalence issue. In the appeal briefing in this case, in my view, it became clear that there are actually two separate doctrines which confusingly are both referred to as the doctrine of foreign equivalence. These doctrines frequently complement each other but they are different and independent. One of them is explained in the Palm Bay imports case. Now this version of the doctrine asks, what do you do when you have a word in a foreign language? In other words, for trademark law purposes, how do you analyze words in foreign languages? The other one is what, at least in the reply brief, I referred to as the Holland doctrine of foreign equivalence named after the 1934 case that described it and that one is different. That one asks or actually says, when you have a term that's factually generic in a foreign country, that term cannot be appropriated or protected as a trademark in the United States. And as was clear from the briefing, we believe that it is the Holland version of the doctrine of equivalence which applies to the present case. Counsel, this is Judge Chen. I'm sorry, the distinction you just made was a little too subtle for me. What was the difference between these two competing conceptions of the foreign equivalence doctrine? Yes, I think I can answer that best by repeating how I believe the Holland doctrine was formulated, which is it asks, if you have a germ which is generic in a foreign country, regardless of language spoken, no one in the United States can appropriate that term as a trademark here or get protection. But what were the facts in Holland? Wasn't it a foreign language? It was a foreign language. The underlying fact was a foreign language. So then that sounds like Palm Bay. It's a situation where you've got a foreign language speaking nation, where there's a generic word for some kind of product or service, and now a US trademark applicant is trying to appropriate that generic word in that foreign speaking nation and use it as a trademark here. Well, I think the key difference was that was the fact, but that's not the way that the Holland court defined the doctrine. I guess what would help me, it would help me if you could explain, is there a case, a circuit court case anywhere in this country that has applied the foreign equivalence doctrine to a fact scenario where there's an allegedly generic word in a foreign English speaking nation? England, South Africa, Australia, New Zealand. Is there a case like that? Your Honor, I am not aware of any such case. Okay, so then this would be the first one. I believe it would be the first one that I know of. Yes. First one I would know of too. Okay, keep going. Can I just insert myself, and maybe it's my lack of familiarity with this doctrine of foreign equivalence, but I don't understand it to be an exception to territoriality, and I understand it, so tell me if I'm missing something. It's a way to understand the perception of consumers in the US, some of whom will be familiar with languages other than English. So the legal status of the word, or even the meaning of the word to citizens of Australia doesn't show that the word means the same to American consumers. Is that right? Am I right in my understanding of this doctrine, that you still have to look to the effect to American consumers or people living in this country? I would disagree with that understanding, two things. First of all, you did mention what the legal status was in a foreign country. I believe the Holland Doctrine really only looks to what the factual status is, and that's one of the ways you avoid contradicting the idea of trademark territoriality. Also, I think you may be, and this is something that Decker's did in its briefing, which is confusing the reasons or the policy reasons behind the Holland Doctrine, and what you actually need to prove in order to apply it in any given case. I think the idea here is that, yes, there are people in the United States that will recognize a word that's generic from a foreign country simply from their experience. But that is regardless of whether the language is involved. And that's one of the two main policy reasons for it. That doesn't mean you need to prove... How could the district court to reject your argument and note that the Australian mother hasn't tied any Australian understanding to an American consumer understanding? Was that the way he analyzed it, and is there something wrong with that framework? I don't know that... Well, certainly the district court said that this doctrine does not apply here. I don't recall that there was a specific tying to the fact that nothing was proved about the meaning of the word within the United States. Perhaps if you could ask the question again. I believe Chief Judge Prost was referring to A15, A16 of the district court's opinion. I mean, you are correct, sir, that the first point that Judge Shaw made was that it doesn't seem like the foreign equivalence doctrine is a good fit in situations like this, given that it's never been applied in this scenario where we're talking about an English-speaking foreign nation. And then over on A16, Judge Shaw makes a second point, which is that in the end, even if you have evidence that the term UGG is generic in Australia, you haven't actually established any evidentiary nexus of that genericness in Australia with how American consumers would might be generic on the other side of the ocean. I think that is correct. And I think the answer is that's not what the doctrine requires. Remember that there were two rationales for it, and the other one was the idea of comity, that we would not want foreign courts to grant trademark protection to those that are... Just to cut to the chase, I understand that there are underlying policy grounds for why the foreign equivalence doctrine exists. We are, as I understand it, required to apply Seventh Circuit law. And under Seventh Circuit law, there are cases like G. Heilman Brewing, right, which made clear that, you know, in footnote 15, that ultimately the relevant test is consumer perception in this country, even if a term has reached generic or descriptiveness status in a foreign country. So what was wrong with the district court below applying the Seventh Circuit law, given that he was bound to, and so are we? Well, if the assumption is that the district court was applying what was said in Heilman, I believe that that reading of Heilman is not correct. As we said in the briefing, this is just a footnote. And I don't think... I think you're looking at two different things. Is there something else from the Seventh Circuit that you could point us to that shows us how the Seventh Circuit would, I don't know, understand how to apply the question of a term that's generic in a foreign country, an English-speaking foreign country, to the question of genericness here? I don't think there is such a case. And the closest thing we've got is G. Heilman and the Duncan case that it refers to. I think that is correct. And I think this is because this is a factual situation which does not come up very often. Quite frankly, not a lot of people try to take a generic term from another English-speaking country and, you know, use it and then register it as a trademark in the United States. I do think Heilman was asking a different question, which was what is... It didn't really get to the doctrine of foreign equivalence as such. Quite possibly. I don't know why the Council on the Case did not cite it. If we're bound... If we believe that we're bound by Heilman, is there a backup argument you have? What do you mean by bound by Heilman? Meaning Heilman definitely applied the doctrine of foreign equivalence? Here, okay. Let me try. If we read Seventh Circuit binding case law as saying, just because a word is generic in a foreign country, that's not good enough to establish genericness in this country. You still have to go further as the challenger and establish some evidentiary connection on how American consumers would perceive the term, given the existence of the fact that it might be generic in a different country. So if that's the way we understand Seventh Circuit law, do you have a backup argument or do you agree that you don't really have a position anymore on the foreign equivalence doctrine? No, I believe the backup argument is that the doctrine does not say you have to consider it generic in the United States. It just says you cannot get protection for it in the United States. Now if you read Heilman as saying the doctrine of foreign equivalence simply does not apply on its own terms, then I suppose I don't have an answer for you, but I believe that that's not what it said. Well I don't think the district... This is Judge Prowse. I don't think the district court here says it doesn't apply at all necessarily, but that there was an evidentiary gap in the way you proceeded to apply it. And what about, I mean, the district court also observed that the case law, I guess Palm Bay Imports, says this isn't an absolute rule and it should be viewed as a guideline. Do you understand that to be the standard and does that not impact what we do in this case? I don't believe that impacts what you do in this case because, I'll finish answering that, because remember the Palm Bay is the different version. It's asking the different question. Palm Bay is asking what do you do when you have a word in a foreign language? And you know, there is no absolute rule when that is the situation. That is not the situation in our case. I don't believe that the Palm Bay version of the Doctrine of Foreign Equivalent applies here. Okay. Thank you. We'll reserve the remainder of your time for rebuttals and let's hear from Mr. Ragour. May it please the court, Kent Ragour for Appley Deckers Outdoor Corporation. The district court got it right. Whether UGG is or was generic in Australia is immaterial because no reasonable jury could conclude that UGG is generic in the U.S. And as Judge Chen pointed out, Seventh Circuit law, which is controlling, holds that terms of foreign origin, that four terms of foreign origin, American consumer perceptions control. And that is found in both the G. Heilemann and the Duncan Yo-Yo cases. And the fatal flaw, as pointed out in Australian Leather's argument, is that it failed to link any generic in Australia evidence in any way to consumer perceptions here in the U.S. In the Heilemann case, this is Judge Proust, is that principle that you've articulated anywhere other than in footnote 15? On page 994, there is sort of a precursor to what's in footnote 15. 994? Yes. Is there a particular quote you're referring to? If you'll bear with me for a moment, just to find it. Okay. I mean, 994 is all about initials of a descriptive term, then initials of a descriptive term are likely also going to be descriptive, just as the descriptive term itself. What I was referring to, frankly, is in 994 where it says the true test is one of consumer perception. How are the initials L.A. perceived by the average prospective consumer? And that's for the question of mere descriptiveness? Yes. That has nothing to do with the foreign equivalence doctrine? I believe that's correct. Okay. So, just to wrap up on Chief Judge Proust's question, there isn't anything else about the foreign equivalence doctrine and the need for American consumer perception other than what is contained in footnote 15, is that right? In the G. Heilmann case, that's correct. So, let me talk a little bit about their argument about foreign equivalence here. Australian weather argues that it would be unfair to allow a term that's allegedly generic in Australia to be turned into a brand here in the U.S. I'd like to ask you a question about how the foreign equivalence doctrine works because this is all new to me. The way it works is that if you see a word, say, in a Japanese dictionary, and the word is for some kind of product, and then you try to file a trademark application here in the United States where your mark, your proposed mark, is that Japanese word for that precise product, the foreign equivalence doctrine would say, no, you can't have that. Is that right? Well, it's a fact-based question. You have to look at the facts, and the courts do that. For example, in the Japanese language case was the Otokoyama case out of the Second Circuit. Well, I'm just asking a very basic question. You don't need to go into case law. Why isn't that basic story the right, accurate understanding of the foreign equivalence doctrine? You can't take Japanese words out of the dictionary and use them as a mark here for the very products that the words are used for in Japan. The reason for that is, as a lot of the cases state, including the Bombay imports, is that you will have Japanese speakers in the U.S. Right, but I'm just trying to understand. I've accurately expressed the principle of how the foreign equivalence doctrine works.  Yes, you have, Your Honor. Okay, so why wouldn't that be applicable in the same way to a foreign English-speaking nation in the sense that if we could open up a dictionary in Australia, right, and they have, I mean, let's say in 1970, hypothetically, they had, in every single Australian dictionary, there was the word UGG, and the definition for the word UGG was sheepskin boot. Then, under the foreign equivalence doctrine, it would seem like anybody that, say in 1990, tried to apply for UGG as a trademark here in the United States for sheepskin boots would be violating all the principles for why we have the foreign equivalence doctrine rule in the first place. Is that right? It's an interesting hypothetical. I have not, like Mr. Bagley, seen a case that talks about what happens in an English-speaking country. Is there any earthly reason why we would have a different rule for an English-speaking foreign nation than we would for a foreign-speaking foreign nation? When you're taking words out of that respective country's dictionaries and using them here for a United States trademark for the very goods that the term is used for in that foreign country. Because as stated in the Federal Circuit's Palm Bay Imports case, the doctrine doesn't apply where it's improbable that the American consumer would stop and translate the word into English. The focus is always on the perception of American consumers, not the foreign consumers. And if the word has no presence, it hasn't penetrated the lexicon in the U.S., then there is no perception of the American consumer. And as stated on page 998 in the G. Heileman case, there it's stated that that's good evidence that a word is indeed not generic here in the U.S. if the consumers for the product at hand or at issue have no sense of the word here. So if, and it's not true by the way, it's actually that it wasn't... Sir, all I'm trying to figure out is, is there any sensible reason why there should be a different rule for generic words from an English-speaking foreign nation than generic words from a foreign-speaking foreign nation? It's not, it's not a different rule. I think again... They should stand or fall together. Is that right? Sorry, could you repeat that? They should stand or fall together, right? I think the doctrine, if it's applied, and again, as Judge Prost said, it is something that is a guideline. It makes sense when you're talking about translations from foreign languages and you have foreign speakers here. If it's English to English and the word isn't even present in the American lexicon, there isn't any reason to apply that doctrine. People here do not perceive it at all. I'm just, this is Judge Prost, I'm just confused why you're fighting back so hard because in this case, the district court ultimately didn't reject the application of the rule entirely. He said there's just no evidence. So I don't know why we're fighting, why you're fighting or pushing back so hard for what I guess I'm understanding you're saying. The rule is it doesn't apply at all if it's English. And frankly, I'm not sure it's more of an intellectual exercise. You're right, the facts in this case show that even if, as Judge Shaw pointed out, even if it had been generic in Australia, it's immaterial here because again, there was no link to any U.S. consumer perceptions. In Australia, there was no evidence that was supplied showing that this word was generic before then. So those are the facts that I've got in this case. And as far as changing the underpinnings of the foreign equivalence doctrine to include English-speaking to English-speaking countries, that's an interesting hypothetical. I don't have a strong belief one way or the other. It's just not this case. Going to some of the evidence, it's interesting because this is what Judge Shaw was faced with. Brian Smith, who was a predecessor to Deckers, moved to the U.S. in 1978. When he moved here, he already knew that Ugg Boots was a registered trademark. That's spelled U-G-H, by the way, registered trademark. Ugg Boots was a registered trademark in Australia in 1971. And then Ugg by itself was registered as a trademark in Australia in 1982. In 2006, IP Australia, its version of RPTO, issued a circular where it stated that generic terms can't be registered in Australia. It had examined applications to register those two marks, Ugg Boots and Ugg. And based on the information at the time, found them suitable for registration. So, I mean, there was no evidence. They produced no opinions from an Australian linguist, a lexicographer, no dictionaries, no encyclopedias or other things before 1979 when it was first used here in the U.S. So, it just, it had no impact. And that was the underpinning for the court's, Judge Shaw's opinion. And on the other side of the coin, in the U.S., long before Smith started using the word Ugg in 1979, L.L. Bean, Montgomery Ward, and Sears were all selling sheepskin footwear products in catalogs throughout the country. None was using Ugg. All were using their own brands accompanied by generic terms like sheepskin, lambskin, and shearling. We had a footwear historian and two linguists who testified. They searched general dictionaries, a footwear dictionary, footwear trade publications, articles, books, newspapers, et cetera, and they found no use of Ugg in the U.S. in connection with footwear before 79. Ultimately, all three of those experts, one of whom was even hired by Australian Leather, found that Ugg had not penetrated the American lexicon before Smith started using it here in 79. And after reviewing all that evidence, Judge Shaw found that no reasonable back finder could conclude that Ugg is or ever was generic in the U.S. What I find here is Australian Leather really has no credibility in making its argument. While it repeatedly asserts that it was wrongly judged because Ugg allegedly is generic for sheepskin boots, it provided no evidence that Judge Shaw could conclude that it was generic in the U.S. or in Australia. And its own actions even paint a different picture. It made stitch-for-stitch copies of Decker's patented boot designs. It then slapped large Ugg labels on them. But it didn't even stop there. It then used Ugg as a trademark on goods that can't remotely be deemed sheepskin footwear. It put it on knit boots that have no sheepskin in them at all. It put it on earmuffs, gloves, and purses. And it used it with sundry other non-footwear items. And it did this because it is a counterfeiter. It was trying to deceive American consumers into believing that it was selling the real thing. Going back to what Judge Shaw said at pages 14 to 15 of the appendix, all this stuff about primary significance tests that they want to change, and they want to drastically drop it from what Booking.com recently affirmed. They want to change the test to the following. As they state in the reply brief, all they want to do is merely find a generic meaning among at least some consumers, or as they state in their opening brief, if a generic meaning for the term simply existed in the U.S. at the relevant time. Under Australian leather's proposed test, valuable trademark rights could be lost if a few people on some remote hamlet used the term in a generic sense before it was used as a trademark. And if this court does what Australian leather asks and lowers the standard for determining genericness and narrows the relevant public, there will be far-reaching consequences that will weaken and undermine trademark rights. We pray that the district court's well-reasoned decision and judgment be affirmed. Thank you. Thank you. Mr. Bagley, you have some time left on rebuttal. I do. I'd like to spend just a brief time responding to what I believe was the doctrine of foreign equivalence points that Mr. Riggler made, although he was getting into the other legal issue, which was the primary significance test. Look, this is not an intellectual exercise. I think there was an incredible amount of evidence, overwhelming, that this term is generic in Australia. I don't even think there's any issue that there is. And, again, I would like to focus the court on the correct question. I think the correct question under the Holland Doctrine of equivalence is not, is the term generic in the United States? The question is, is it protectable as a trademark in the United States? The doctrine, as it rather clearly says, and it's set out in the brief, does not ask what the status is in the United States along that generic to arbitrary spectrum. It's simpler than that. And where the district court went wrong is that it said, well, this doctrine must be telling us that it has to be considered generic in the United States, and I can't find that, therefore I'm not going to apply it at all. That's not what the doctrine says. The doctrine says don't worry about what its status is in the United States. If it's generic in a foreign country, you can't get protection, you can't turn it into a trademark here. And I'd like, like you said, I disagree with counsel's description of all the evidence. I would refer the court to the briefs. I think it's quite set out there that the evidence is very different from what counsel described. I would like to take a little bit of time, if I have left, to deal with the primary significance test. I would put it this way to the court, because that's a separate issue that has to do with. Well, I guess I don't know how much time you have left, but is that, I mean, did the other side raise it? Because you shouldn't be raising new areas that weren't covered in your first argument. It's not fair to the other side, right? Okay. Yeah. Well, I believe that counsel did drift into the primary significance test a little bit, because he's asking when he was to state. Well, okay. I would then say please look at the briefs on that issue. Okay. Thank you. We thank both sides, and the case is submitted. That concludes our proceeding for this morning. Thank you, Your Honors. The Honorable Court is adjourned until tomorrow morning at 10 a.m.